973 So.2d 900 (2007)
STATE of Louisiana, Appellee
v.
Frederick BOYTE, Appellant.
No. 42,763-KA.
Court of Appeal of Louisiana, Second Circuit.
December 19, 2007.
*902 Lavalle B. Salomon, Monroe, for Appellant.
Jerry L. Jones, District Attorney, George D. Ross, Assistant District Attorney, for Appellee.
Before BROWN, WILLIAMS and MOORE, JJ.
MOORE, J.
After a bench trial, the defendant, Frederick Boyte, was convicted as charged of one count of malfeasance in office. The Court sentenced Boyte to serve five years imprisonment at hard labor, a portion of which was suspended; and ordered him to pay restitution in the amount of $1,403.42' and a fine in the amount of $3,500.00. The defendant now appeals, urging nine assignments of error. After review, we affirm the defendant's conviction and sentence.

FACTS
Defendant Frederick Leon "Bo" Boyte was the public works director for the Ouachita Parish Police Jury ("OPPJ") from February 1997 until the summer of 2001. As public works director, Mr. Boyte was in charge of the maintenance and operations of roads and drainage infrastructure in the parish.
On February 12, 2003, the Louisiana Legislative Auditor completed an investigative audit of the OPPJ. The audit revealed a number of areas where the funds *903 or property of the OPPJ had been mismanaged by various OPPJ employees. As a result of the audit, the Ouachita Parish District Attorney's office investigated the matter and subsequently charged several persons with the commission of crimes as a result of their conduct as public employees.
The defendant was charged by bill of indictment on June 23, 2003, in which the grand jury charged Boyte with one count of malfeasance in office, from January 1, 1999, through December 31, 2002, inclusive.
Several months before the bill of indictment was filed, Boyte's attorney, Johnny Carl Parkerson, negotiated an agreement with the district attorney, Jerry Jones, which was memorialized in a letter dated February 20, 2003, from the district attorney to attorney Parkerson. The letter reads, in part:
Dear Johnny:
I have spoken with the U.S. Attorney Joe Jarzebec [sic], who will honor our agreement regarding the above-listed individual. In the event that federal jurisdiction is revealed by this, investigation or as a result of the cooperation of your client, he will be expected to cooperate with the Federal Authorities. Our agreement is that your client will be indicted for whatever charges are at the moment appropriate but will, in return for truthful testimony, be allowed to plead to one count of malfeasance in office with a suspended sentence. In the event that your client's cooperation reveals criminal acts by superior elected or appointed officials, this will result in the changing of this agreement by reducing or eliminating your client's criminal exposure.
The complete extent to which the defendant cooperated with authorities is not a part of this record. Boyte apparently testified before the Grand Jury on June 11 and June 17, 2003. It is undisputed that Boyte also testified at the February 21-23, 2006 trial of Mr. Woodson McGuffie, the assistant parish administrator. Mr. McGuffie was charged and convicted of malfeasance for using parish equipment, funds and one of Boyte's men, Stone, to trim trees on his Union Parish property. Boyte testified at the trial that McGuffie had authority over him and Stone, although McGuffie testified that neither Boyte nor Stone was under his authority. McGuffie was sentenced to serve five years imprisonment at hard labor, three years of which was imposed without suspension of sentence. This court affirmed McGuffie's conviction but found the sentence constitutionally excessive and remanded the case to the trial court for resentencing. State v. McGuffie, 42,069 (La.App. 2 Cir. 8/1/07),' 962 So.2d 1111. There was also argument that Boyte's testimony led to the prosecution and conviction of one Daryl Berry, who was allegedly "higher in the political vacuum."
On March 17, 2006, the defendant filed a Motion to Enforce Immunity Agreement and/or to Quash the Indictment and Amended Indictment Herein. In the motion, the defendant alleged that he had complied with the agreement evidenced in the February 20, 2003 letter by giving statements to investigators, the District Attorney and the Grand Jury. Boyte alleged that he had subsequently been charged with "several unrelated charges," and that his malfeasance charge had been amended to include acts discovered through Boyte's statements given in connection with the agreement. Boyte argued that these statements were not "voluntary" and asked the court to suppress all his statements made to all law enforcement members and enforce the "immunity *904 grant" agreement since he had given up his right to incriminate himself.
The district court held a hearing on that motion on June 29, 2006, in which it held that the part of the plea agreement in which Boyte would be allowed to plead guilty to one count of malfeasance and receive a suspended sentence in exchange for his cooperation was contractually invalid due to failure of cause since the prosecutor did not have the authority to bind the court to a suspended sentence. Nevertheless, the prosecutor stated that it intended to comply with the agreement by charging the defendant with only one count of malfeasance. He also argued that the plea agreement granted only "use" immunity, and, anticipating that the defen dant would seek to suppress all statements and testimony he had given, argued that all statements made by Boyte after the plea agreement were voluntary and it was prohibited from using only those statements by Boyte during the plea agreement negotiations. Once the agreement was confected, he argued, Boyte's statements were "voluntary," and these statements as well as any evidence obtained from other sources or information obtained prior to the negotiations of the plea agreement were admissible. The court did not rule on this issue in this hearing and set a date for a hearing on a motion to suppress Boyte's statements and testimony.
Regarding that part of the agreement which stated that if Boyte's "cooperation reveals criminal acts by superior elected or appointed officials," it would "result in the changing of this agreement by reducing or eliminating your client's criminal exposure," the court's ruling in this hearing is not altogether clearthe issue was apparently dropped. The state argued that this part of the plea agreement did not apply because none of Boyte's statements or testimony revealed any new suspects or superior elected officials who were not already "suspects." He thus argued that the state's only obligation was to offer the one count of malfeasance.
In response, Boyte's attorney, who was not part of the plea negotiations that resulted in the agreement memorialized in the February 20, 2003 letter, apparently conceded that seeking enforcement of this aspect of the agreement by demanding a dismissal or reduced charge was untenable. He thus argued:
I wasn't there for that. I assume maybe it indicated dismissal or perhaps a misdemeanor. We're not-the State says that it didn't lead to the indictment or conviction of individuals who are higher up in the food chain. That's fine, your Honor. I'm interested in having them stick to the first part of their agreement which his [sic] pleading to one count of malfeasance and a suspended sentenceldlslince he's complied with the other conditions as required. Any further conditions regarding people higher up in local government as it may be, uh would simply requirewould result in some further reduction. And we're not seeking that. We're seeking the plea of malfeasance and our suspended sentence.
Boyte's attorney thus acknowledged that the state was only prosecuting on one count of malfeasance but sought enforcement of the limitation on the sentence outlined in the agreement or, in the alternative, suppression of Boyte's statements made in reliance on the agreement. Later, after conferring with Boyte, the defendant's counsel informed the court that Boyte had provided testimony that led to the prosecution and conviction of one Darryl Berry "who was higher in the political vacuum if you will." No further information was offered about that case. The court denied the defendant's motion, finding *905 that there was a failure of cause as to the agreement because the district attorney had no authority to bind the court regarding the sentence to be imposed.
The parties contemplated that, based on this ruling, Boyte would file a motion to suppress his statements. He filed that motion on July 10, 2006, and the court held a hearing on the motion on July 24, 2006. The prosecutor ultimately agreed that the defendant's grand jury testimony and testimony to law enforcement officials given after the plea agreement should not be admitted into evidence, and the defendant agreed that evidence derived independently of his statements should be admissible. After hearing testimony from investigators, the court concluded that no additional evidence needed to be suppressed.
On July 28, 2006, the defendant filed a motion to recuse the trial judge, C. Wendell Manning. The defendant stated that he had recently testified in the case against Mr. Woodson McGuffie, cited above, where the same judge presided over trial. Boyte stated that he had made certain incriminating statements and admissions during the McGuffie trial. Boyte's motion then stated:
5. It is asserted that the appearance of Defendant and the testimony given in that trial before this same division will interfere with the defense of his matters presently pending before the same division.
6. It is shown that the testimony heard by the Court will have a chilling and prohibitive effect on Defendant's right to trial by judge alone should he choose. Indeed, it would be impossible to proceed in such a fashion.
7. It is further shown that within the context of sentencing or post-verdict but pre-sentence motions, Defendant would be hindered in both the production of evidence and testimony by the Court's foreknowledge.
Neither the motion nor the memo asked that the motion be assigned to a different judge for a ruling. Judge Manning presided at the hearing on the motion to recuse. on August 8, 2006, and found no grounds to refer the motion to another judge or to recuse himself. Apart from an objection to the ruling itself, the defendant did not raise an objection to Judge Manning's consideration of the motion.
Immediately thereafter, Boyte waived his right to a jury trial. The court put Boyte on the witness stand and determined that Boyte had made the decision to waive trial by jury voluntarily.
Trial commenced on August 9, 2006. Before trial, the state indicated that it would offer evidence of seven different acts of Boyte that it alleged to constitute malfeasance in office. These acts were:
1. The sale of a "thumb" attachment for a trackhoe, the proceeds of which sale were given to support Royce Calhoun's political campaign;
2. The gift of a OPPJ-owned fourwheeler to another Ouachita Parish employee, Jerry Johnson;
3. The removal of equipment from a Parish-owned pickup truck prior to auction, which removal was allegedly designed to reduce the truck's value at auction, and which equipment Boyte allegedly ordered reinstalled after Royce Calhoun bought the truck;
4. The placement of Parish-owned pavement on the parking lot of a church where an OPPJ juror was a member;
5. The placement of Parish-owned paving material on the private driveway of Mr. Jerry Johnson in Union Parish;
6. The use of an OPPJ-rented bulldozer to improve his property and/or the *906 property of former OPPJ member Grady Williams;
7. The trimming of trees on assistant Parish administrator Woodson McGuffie's property in Union Parish.
At trial, the state did not to introduce evidence regarding acts three and four. However, it offered documentary evidence and the testimony of several witnesses in support of the other alleged acts of wrongdoing. The court was convinced of Boyte's guilt beyond a reasonable doubt on only three of the remaining five acts, namely number two (the four-wheeler), number six (the bulldozer), and number seven (the tree-trimming). The testimony and exhibits regarding these three acts is summarized as follows:
Tree Trimming
Mr. Cecil Janway, Jr., the public Works director for the City of Monroe, testified that he had been the OPPJ's public works director until Boyte got the job, and he (Janway) became the Parish Administrator in charge of all the departments, including Public Works. Janway explained that the director's job was to oversee the maintenance and operation of the Parish's roads and drainage systems as well as the oversight of subdivision development. Janway testified that the Parish never had a contract to work on any public works projects in Union Parish and in particular had no contract to do work on the property of Woodson McGuffie. He said that Boyte was never authorized to use public employees or equipment to improve the private property of other Parish employees. Janway also explained that the public works director had no authority to sell or give away a piece of Parish-owned equipment for any reason.
Mr. Earl Stone testified that he had been a surveyor and occasional tree-trimmer who worked for the OPPJ public works department while Boyte was the director. Stone said that in December 2000, Boyte called him into his office and "said that he had someone that needed some . . . tree work done at their place. The "someone" was Mr. Woodson McGuffie. Stone met with McGuffie who gave him directions to his house and what work he needed done. Stone visited the site and returned to the public works department; he said that when he told Boyte of the Parish equipment he would need for the job, Boyte told him "whatever I needed to do to get the job done and get what I needed[,] let him know. . . ." Stone said that Boyte authorized the use of a Parish vehicle and parish equipment for this job. Stone testified that the OPPJ paid him to do this job at Mr. McGuffie's property in Union Parish, the first and only time he had ever done work under those circumstances. The state also introduced Exhibits S-1 and S-2 that reflected the timesheets and overtime pay to Stone.
Yamaha Four-Wheeler
Jerry Dean Johnson was a shop foreman at the public works department when Boyte was the director. He testified that he picked up equipment from the recentlyclosed Ouachita Parish Mosquito Abatement program, including a Yamaha "Big Bear" four-wheeler / ATV and took it for the use of the OPPJ. Johnson believed that OPPJ purchased the equipment from Mosquito Abatement, but he admitted on cross-examination that he really did not know.
Records reflect that in 1992, the director of the Mosquito Abatement district Purchased the ATV in his own name, not in the name of the district. Exhibit S-13; other records (Exhibit S-14 in globo) indicate that the purchaser was the Mosquito Abatement district. Mr. Janway, the public works director, recalled that the public works department of the OPPJ acquired *907 the ATV when the police jury privatized mosquito control.
The ATV was stored at the public works department's storage area, and Johnson thought that the ATV would be used for "beaver control," but he testified that he had a conversation with Mr. Boyte about the ATV:
I think if I remember right ithe asked me did I want it. I said, you know, I had no purpose for it because I already had one. He said, "Well, just make it disappear."
Johnson said that the machine was not on the OPPJ's asset list, the list of all property owned by the police jury. He testified that he took "just make it disappear" to mean that Boyte was giving the machine to him, although the OPPJ had auctioned off another four-wheeler received from the same source. Johnson gave the fourwheeler to a friend of his. Johnson admitted that he pled guilty to malfeasance in office due to his conduct while at the OPPJ, and he had given numerous versions of the facts to authorities during the investigation.
OPPJ treasurer Brad Cammack explained that the mosquito abatement district that was the original owner of the four-wheeler was "a political subdivision of the police jury" and that the police jury acquired the assets of the district when the police jury started operating the district in 1996. Cammack said that the ATV was on the police jury's asset list at one point (which lists were not available because they had been destroyed) but simply was not entered on the lists for 1998 and later (Exhibit D-1) when the OPPJ changed computer systems and the assets had to be manually re-entered. Cammack said that it was the job of the department heads, like Mr. Boytey to ensure that the asset lists were accurate. The ATV was titled in the OPPJ's name in 2004. Exhibit S-15.
Dozer Work
Former OPPJ Juror Grady Williams testified that he had been a police juror between 2001 and 2002. Mr. Williams owns property in Ouachita Parish adjacent to property owned by Mr. Boyte. Williams explained that his property was not developed and contained four "dilapidated houses . . . [and] a lot of junk around it [and] trees on it I needed taken down." He testified that in June 2001, he told Mr. Boyte that he needed somebody to clean the property, and Mr. Boyte performed the work himself using a bulldozer. The area where the work was done was not on a Ouachita Parish servitude.
The dates this work was done are critical to a finding of malfeasance. On June 26, 2001, about a week after their conversation, Mr. Williams paid Mr. Boyte $4,000.00 for doing the work. Exhibit S-9. Williams said both that he may have written the check on the day Boyte completed the work and also that Boyte may have completed the job in the days before the date of the check. June 26, 2001 was a Tuesday, and Mr. Williams recalled telling police that he had been to the property on the previous Saturday or Sunday and found that the work was completed. The state argues that:
. . . Grady Williams testified that when he paid defendant for the work done on his property on June 26, 2001 (a Tuesday), the rented bulldozer was still on his property.
We have not found testimony that supports this assertion. The defendant called his sister, Ms. Barbara Elliott, as a witness; she lived within a few miles of the property and saw Boyte doing the dozer work. Ms. Elliott said that she remembered that the dozer work was completed on a Saturday, and she did not see the dozer at the site after that day. Also, the *908 record contains Exhibit J-1, an invoice issued by an equipment company, Nortrax South, to Bo Boyte personally; this invoice does not mention the OPPJ. The invoice is for the rental of a piece of equipment, a "JD 750C," for the period of June 15, 2001, through June 25, 2001, and is in the amount of $1,620.00. It has a checkmark indicating that the customer picked up and returned the equipment.
Exhibit S-10 is an invoice from Nortrax South, to the OPPJ. The invoice is dated July 24, 2001, and states that it covers the billing period from June 23, 2001, through July 24, 2001. Nortrax billed the OPPJ $4,700.00 for the use of a "750C LT" that was "ordered by Bo Boyte." OPPJ treasurer Brad Cammack explained that this invoice was for the rental of a bulldozer to the OPPJ. The serial number on the dozer, although given only partially on the first document, appears to be the same on both invoices. According to Cammack, the legislative auditor determined that the bulldozer was being rented by the OPPJ at the time it was used on Mr. Williams' land, and Mr. Williams later reimbursed the OPPJ $1,828.00. Exhibit S-11.
Mr. Todd Dumas was employed in the construction department of the OPPJ in June 2001. He testified that Mr. Boyte asked him to pick up a bulldozer at Nortrax sometime in June 2001 and take it to a location that proved to be Mr. Williams' property. Mr. Dumas said that he did not use OPPJ equipment to move the dozer (he borrowed the truck and trailer from the rental store) and that he was on his day off when he did the work for Boyte.
At the conclusion of testimony, the court charged itself with the applicable law and with La. R.S. 42:1461 dealing with the obligations of public officials and employees. Based on all of this evidence, the court was convinced beyond a reasonable doubt that Mr. Boyte was guilty of malfeasance in office. The court issued lengthy reasons for its ruling.
With regard to the four-wheeler, the court was convinced that Mr. Johnson was a credible witness when he testified that Boyte told him to make the ATV "disappear." Regarding the dozer work, the court accepted Mr. Williams' testimony that the work had been done within the four or five days leading up to June 26, 2001, and noted that the dozer had been rented by the police jury for part of this time. Finally, as to the tree trimming, the court accepted the testimony of the witnesses who said that Boyte had no authority to order such work in Union Parish on private property.
The court ordered a pre-sentence investigation, and the OPPJ prepared a restitution statement. The court sentenced Boyte on November 30, 2006. The court reviewed the pre-sentence investigation and, in accordance with La. C. Cr. P. art. 894.1, verbally recited extensive reasons for selecting the sentence for this defendant. This was Mr. Boyte's second felony conviction.
The sentencing record reveals that Mr. Boyte has had numerous recent brushes with the law:
Boyte was arrested by the OPSO in July 2004 and charged with four counts of illegal possession of stolen things, one count, of altering or defacing the vehicle identification number on a motor vehicle and one count of having an altered or fictitious registration. The four stolen things charges were later reduced to one count and referred to Mr. Boyte's possession of a bulldozer; a jury acquitted Boyte on these charges in March 2006.
In August 2004, the district attorney in East Baton Rouge Parish charged Boyte with felony theft; that charge was later amended to one count of illegal possession *909 of stolen things valued at $500.00 or more. This charge related to a bulldozer stolen from a construction company. Boyte pled guilty to that charge in April 2005 and was sentenced to serve five years imprisonment at hard labor, suspended, and was placed on three years supervised probation.
In October 2004, the prosecutor in the 10th Judicial District in Ashley County, Arkansas, charged Boyte with theft of equipment worth more than $2,500.00 from a timber company, and that charge remains pending. Finally, in January 2005, the Avoyelles Parish district attorney charged Boyte with felony theft related to the theft of a tractor from a construction company; that charge was still pending at the time of sentencing in the instant matter.
In reviewing the sentencing guidelines, the court found applicable La. C. Cr. P. art. 893.1(B)(3) (receipt of something of value for the offense), (4) (use of position or status to facilitate the offense) and (13) (offender was a leader or supervisor). In mitigation, the court found applicable La, C. Cr. Part. 893.1(B)(29) (conduct unlikely to recur; Boyte was no longer employed by the OPPJ) and (30) (offender likely to respond affirmatively to probation based on statements by his probation officer in the PSI). The court also reviewed Boyte's social history, noting that he was a 55-year-old man who had obtained his GED while serving in the National Guard. The defendant has twice been married and has children and grandchildren with whom he has a good relationship.
The court also discussed Boyte's cooperation with law enforcement and prosecutors during the investigation into the irregularities at the OPPJ. The court noted that most of the evidence against the defendant had been developed through independent sources, not with the defendant's cooperation, and also noted that a pending prosecution against one of the Ouachita Parish police jurors might have to be dismissed due to the lack of cooperation with prosecutors by Boyte. The court further discussed the many letters it had received in support of Boyte, some of which stated that Boyte had a positive impact on the operation of the OPPJ's public works department, and noted that this information had a mitigating effect on the sentence.
However, the court expressed concern that Boyte has maintained that the criminal matter was all "a big misunderstanding" and had refused to take responsibility or show remorse for his actions. In particular, the court stated that it was important that the public have confidence and trust in its institutions, that the defendant's conduct eroded that confidence and that he must be held accountable for his actions.
The court sentenced Boyte to the maximum term of imprisonment for malfeasance in office, 5 years imprisonment at hard labor. The court ordered that Boyte serve the first 3½ years of the sentence and further ordered that the remaining 18 months be suspended, with the defendant to be placed on supervised probation for 3. years. The court ordered Boyte to pay restitution to the OPPJ in the amount of $1,403.42. Finally, the court ordered Boyte to pay a fine in the amount of $3,500.00 within the first two years of his supervised probation, in default of which he was to serve another year of imprisonment.
Boyte timely filed a motion to reconsider sentence, arguing that the sentence was excessive, that the court did not adequately consider a variety of mitigating circumstances, that the court provided inadequate reasons for the sentence and that the sentence was disproportionate to the *910 sentences of other persons found culpable at the OPPJ.
In support of this last claim, the defendant supplied proof of conviction and sentence for several other persons involved in the irregularities at the police jury. The court denied the motion with written reasons, noting that the conduct of the other culpable people in this matter was different from the defendant's conduct, that the defendant could have been charged with seven counts of malfeasance in office and could have been convicted of "at least" three of those counts had they been brought separately, and reiterated that the defendant's cooperation with authorities had been limited. Boyte now appeals, urging nine assignments of error.

DISCUSSION
Assignment of Error 4. The State failed to carry its burden of proof.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981) if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency of the evidence claim is wheth er, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2000, State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App. 2 Cir. 8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Burd, 40,480 (La.App. 2 Cir. 1/27/06), 921 So.2d 219, writ denied, XXXX-XXXX (La.11/9/06), 941 So.2d 35; State v. Jones, 31,613 (La.App. 2 Cir. 4/1/99), 733 So.2d 127, writ denied, 99-1185 (La.10/1/99), 748 So.2d 434; State v. White, 28,095 (La.App. 2 Cir, 5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
La. R.S. 14:134 provides, in part: *911 Malfeasance in office is committed when any public officer or public employee shall:
(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or (2) Intentionally perform any such duty in an unlawful manner; or
(3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.
Any duty lawfully required of a public officer or public employee when delegated by him to a public officer or public employee shall be deemed to be a lawful duty of such public officer or employee. The delegation of such lawful duty shall not relieve the public officer or employee of his lawful duty.
Under Louisiana law, prosecutions for malfeasance of office as defined by La. R.S. 14:134(1) and 14:134(2) presuppose the existence of "a statute or provision of the law which delineates an affirmative duty upon the official." State v. Espejel, 38,071 (La.App. 2 Cir. 3/3/04), 867 So.2d 863, citing State v. Perez, 464 So.2d 737, 741 (La.1985); State v. Schwehm, 98-1599 (La.3/19/99), 729 So.2d 548. This duty "must be expressly imposed by law upon the official because the official is entitled to know exactly what conduct is expected of him in his official capacity and what conduct will subject him to criminal charges." Espejel, supra, citing State v. Perez, supra.
La. R.S. 42:1461 provides, in part:
A. Officials, whether elected or appointed and whether compensated or not, and employees of any "public entity", which, for purposes of this Section shall mean and include any department, division, office, board, agency, commission, or other organizational unit of any of the three branches of state government or of any parish, municipality, school board or district, court of limited jurisdiction, or other political subdivision or district, or the office of any sheriff, district attorney, coroner, or clerk of court, by the act of accepting such office or employment assume a personal obligation not to misappropriate, misapply, convert, misuse, or otherwise wrongfully take any funds, property, or other thing of value belonging to or under the custody or control of the public entity in which they hold office or are employed.
In order to convict Boyte of malfeasance in office, the state only had to prove one act by Boyte, coupled with the required intent, in violation of Boyte's duties.
Our review of the record indicates that the state clearly carried that burden of proof regarding the tree trimming incident on Woodson McGuffie's property in Union Parish. Testimony clearly showed that Boyte had no authority to order Stone to exert his labor and use OPPJ equipment to perform tree trimming services on private property in Union. Parish. That act was plainly a violation of Boyte's duty not to misuse public employees and property. Further; the evidence was sufficient to prove that Boyte intentionally ordered Earl Stone to perform this task in violation of the law and that he knowingly permitted Stone to intentionally perform his job in an unlawful manner.
Given the trial court's acceptance of the testimony of the witnesses, the evidence was sufficient to show that Boyte also intentionally misappropriated or converted OPPJ property when he ordered his employee, Johnson, to make the Yamaha ATV "disappear." Johnson testified that Boyte first asked whether Johnson wanted the ATV for himself prior to telling Johnson to *912 make it disappear, evidence that clearly indicates Boyte's intent to deprive the OPPJ of the use of the four-wheeler.
The evidence regarding the bulldozer is more equivocal, with Mr. Williams, perhaps understandably, having a poor memory of the dates of the work done five years prior to the trial. Nevertheless, the trial court accepted Williams' statement that the work had been done in the days leading up to the date of his check, and this time period includes days when the OPPJ was paying for the bulldozer.
The defendant also argues that there is no proof that he took an oath of office and, thus, the state's proof of his duty must fail. Although an oath of office is one recognized way in which a duty can arise, see Espejel, supra, the provisions of La. R.S. 42:1461 impose various duties upon public employees simply "by the act of accepting such office or employment." Boyte served for years as the director of public works for the OPPJ, clearly falling within the ambit of this statute, and the state's proof of Boyte's duties was sufficient.
This assignment of error is without merit.
Assignment of Error 1. The trial court erred in failing to recuse itself for trial of Appellant's matter.
Assignment of Error 2. The trial court erred in failing to assign a separate division of court to hear Appellant's motion to recuse.
In these assignments of error, Boyte argues that the trial court mishandled his motion to recuse.
La. C. Cr. P. art. 674 provides:
A party desiring to recuse a trial judge shall file a written motion therefor assigning the ground for recusation. The motion shall be filed prior to commencement of the trial unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after the facts are discovered, but prior to verdict or judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion for hearing to another judge or to a judge ad hoc, as provided in Article 675.
The article provides that a judge shall recuse himself or refer the motion for a hearing before another judge when "a valid ground for recusation is set forth in the motion." Boyte argues that his motion to recuse the trial judge set forth a valid ground for recusation because the motion stated that the judge had presided over another trial in which Boyte testified and made certain incriminating statements. The trial judge found that this allegation "provide[d] no grounds for relief' and declined to recuse himself or to refer the motion to another judge.
La. C. Cr. P. art. 671 provides, in part:
A. In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
(2) Is the spouse of the accused, of the party injured, of an attorney employed in the cause, or of the district attorney; or is related to the accused or the party injured, or to the spouse of the accused or party injured, within the fourth degree; or is related to an attorney employed in the cause or to the district attorney, or to the spouse of either, within the second degree;
(3) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during *913 the latter's employment in the cause;
(4) Is a witness in the cause;
(5) Has performed a judicial act in the case in another court; or
(6) Would be unable, for any other reason, to conduct a fair and impartial trial.
The defendant's motion to recuse simply argued that the trial judge had presided over another criminal trial in which the defendant testified. He argued that having the same judge would have a chilling effect on his right to trial by judge and the defendant would be hindered in the production of evidence by the court's fore-knowledge. The defendant did not allege in his motion that the trial judge was biased or prejudiced against him or that the judge would be unable to conduct a fair and impartial trial, In its written reasons for ruling on the motion, the trial court correctly observed that the state had agreed not to use Boyte's testimony from the McGuffie trial in Boyte's trial. The trial court cited State v. Littleton, 395 So.2d 730 (La.1981), and noted that the mere fact that a judge has presided over other proceedings involving the defendant is not, alone, sufficient to show any grounds to recuse.
The defendant cites Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) for the proposition that the trial judge should not have presided over this case. In Santobello, a defendant entered into a plea agreement with the prosecutor to plead guilty to a lesser offense in exchange for a promise from the prosecutor not to make a sentence recommendation. After a delay caused by various motions, the defendant came before the court to be sentenced, at which time a new prosecutor made a recommendation for the maximum sentence, which the court imposed, albeit after stating that the recommendation had no impact on the sentencing decision. The defendant obtained no relief through the appellate process until he reached the United States Supreme Court, which vacated the decision below and remanded the case for further consideration by the state courts, stating in part:
[A] constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.
Boyte notes that the Supreme Court remanded the case with instructions that the petitioner should be resentenced by a different judge if the state courts denied his motion to withdraw his plea, although the court noted:
We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge.
This case and its progeny are inapposite. In Santobello, the court's concern was due to the trial judge's direct participation in a process that it found to be fundamentally flawed and was calculated to insure that the defendant received due process in the handling of this prosecution. No such concerns are present or even suggested in the instant case; the prior matters handled by this trial judge observed the letter of the law as it regards this defendant, and the fundamental fairness of these proceedings is not in question. As the trial court observed, our jurisprudence is replete with instances in which the same judge hears a defendant's Prieur motion, motion to suppress or motion in limine presides over the defendant's trial. Indeed, the defendant opted to waive trial by jury and elected to be tried by this same judge immediately after his motion to recuse was denied.
*914 These assignments of error are without merit.
Assignment of Error 3. The trial court erred in failing to compel compliance of the plea agreement struck between the District Attorney and Appellant's counsel.
Boyte argues that the court erred in failing to "require" or "compel" the specific performance of his plea agreement with the district attorney wherein Boyte would be allowed to plead guilty in exchange for a suspended sentence.
A plea bargain is a contract between the state and a defendant. State v. Lewis, 539 So.2d 1199 (La.1989). The consent of both parties is required. Error, fraud, or duress may vitiate consent. Id. Error vitiates consent when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. Id.
In State v. Manchester, 545 So.2d 528 (La.1989), the supreme court explained that a trial judge has the right to reject a plea bargain even if the state and the defendant both concur as to its terms. However, a trial court may not deny a defendant the right to withdraw a guilty plea when the trial court rejects the agreement regarding the punishment to be imposed that is a part of the bargain that led to the guilty plea. In the instant case, the defendant did not plead guilty and there was nothing for the trial court to compel the prosecutor to do. Indeed, the prosecutor limited the charge against Boyte to a single count of malfeasance and maintained that limited charge even though he could have brought perhaps seven counts (or at least three).
After the trial court rejected the suspended sentence provision of the agreement, pursuant to the motion to suppress, the prosecutor and defendant's counsel agreed that no evidence against the defendant that arose from his statements made in furtherance of the plea agreement would be admissible; the evidence presented at trial consisted of evidence developed without the defendant's assistance. Although we are somewhat astounded that the state would offer a plea agreement that included a suspended sentence without involving the court, we find no error in the trial court's exercise of its discretion to reject this plea agreement limiting the court's sentencing options. Given the arguments presented at the hearing on the motion to enforce the immunity agreement and the resultant limitation of the evidence presented at trial, we find no violation of Boyte's due process rights in the trial court's handling of this matter. This assignment of error is without merit.
Assignment of Error 5. The sentence imposed is excessive and disproportionate and a needless imposition of pain and suffering, and, therefore, is in violation of Article 1 of the Louisiana Constitution of 1974, as amended.
Assignment of Error 6. The trial court did not adequately consider mitigating circumstances in this matter.
Assignment of Error 7. The trial court failed to articulate adequate reasons which would serve as a factual basis for the sentence imposed.
Assignment of Error 8. The trial court failed to adequately consider an alternative and/or significantly less harsh sentence.
Assignment of Error 9. The sentence is unconstitutional on its face as it exceeds the statutory maximum sentence that could be imposed.
The defendant finally claims that his sentence is too harsh. La. 14:134 provides, in part:

*915 Whoever commits the crime of malfeasance in office shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars or both.
As noted, the defendant's five-year sentence is the maximum permitted by the statute, although his $3,500.00 fine is less than the maximum.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App. 2 Cir. 2/28/07), 953 So.2d 890. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App. 2 Cir. 1/28/04), 865 So.2d 284, writs denied, XXXX-XXXX (La.3/11/05), 896 So.2d 57 and 2004-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2 Cir. 04/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.06/24/05), 904 So.2d 728.
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La. App. 2 Cir. 3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La. 1992); State v. Robinson, 40,983 (La.App. 2 Cir. 1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App. 2 Cir. 4/2/97), 691 So.2d 864.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Russell, 40,526 (La.App. 2 Cir, 1/27/05), 920 So.2d 866, writ denied, XXXX-XXXX (La.9/29/06), 937 So.2d 851; State v. Jackson, 612 So.2d 993 (La.App. 2 Cir.1993). The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof that the defendant committed the other offenses. State v. Jones, 31,569 (La. App. 2 Cir. 12/9/98), 724 So.2d 810; State v. Anderson, 30,060 (La.App. 2 Cir. 10/29/97), 702 So.2d 40, 42.
As a general rule, maximum or near maximum sentences are reserved for *916 the worst offenders arid the worst offenses. State v. Woods, 41,420 (La.App. 2 Cir. 11/1/06), 942 So.2d 658; State v. Brisco, 33,179 (La.App. 2 Cir. 4/5/00), 756 So.2d 644, writ denied, XXXX-XXXX (La.5/25/01), 792 So.2d 749; State v. Grissom, 29,718 (La.App. 2 Cir. 8/20/97), 700 So.2d 541. However, a trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion we may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App. 2 Cir. 5/12/04), 873 So.2d 939; State v. Lingefelt, 38,038 (La.App. 2 Cir. 1/28/04), 865 So.2d 280, writ denied, XXXX-XXXX (La.9/24/04), 882 So.2d 1165.
In this case, the record reflects that the trial court gave thorough, detailed and accurate consideration to those factors important in the determination of a proper sentence for Boyte. The defendant exhibited a pattern of conduct as the director of public works that, as the trial court stated, "he treated the office as though it was his own private company doling out favors to those of his choosing." The defendant received a significant reduction in his maximum sentence exposure due to the prosecutor's decision to charge him with only a single count of malfeasance in office. The defendant's actions were not justified by any need or reason, and perhaps most importantly the defendant has a felony conviction and other criminal involvement for events that occurred after the auditor's report of his conduct at the OPPJ came to light. There is no valid comparison with the conduct of others involved with the OPPJ scandals as each of those cases is unique. This defendant's five-year sentence, with eighteen months suspended, is justified by the facts, was adequately supported by the trial court's reasons, and is not constitutionally excessive.
Additionally the defendant complains that the trial court erred in imposing an additional year of imprisonment should he fail to timely pay the fine imposed. La. C. Cr. P. art. 884 provides, in part:
If a sentence imposed includes a fine or costs, the sentence shall provide that in default of payment thereof the defendant shall be imprisoned for a specified period not to exceed one year
The record does not reflect that the defendant is indigent; accordingly, the additional "default time" may legally be imposed. State v. Lukefahr, 363 So.2d 661 (La.1978), cert. denied, Lukefahr v. Louisiana, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).
These assignments of error are without merit.

CONCLUSION
For the above reasons, we affirm Boyte's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.