DREW, J.
 

 IvAt jury trial, Patrick Dewayne Dyas was found guilty of obstruction of justice. Adjudicated as a second felony offender, he was sentenced to 40 years at hard labor without benefit of probation or suspension of sentence. He was fined $10,000. We affirm the conviction, amend the sentence, and, as amended, we affirm the sentence.
 

 FACTS
 

 While extinguishing an early morning house fire at 3127 Poland Street in Shreveport, Louisiana, firefighters discovered two bodies in the ruins of the dwelling. Both the male and the female body appeared to have stab wounds. Shreveport Police Department detectives and a Shreveport Fire Department investigator were called in to assist. The female victim was identified as Jacquetta “Jackie” Moore. Detectives were unable to make an identification of the male but first thought it might be Moore’s boyfriend, Patrick Dyas, defendant herein.
 

 Detectives found Dyas at his home that morning and transported him to police headquarters for a voluntary interview. During the interview, Dyas was very cooperative in providing information. He acknowledged his relationship with Moore and indicated they got along fine. After the interview, Dyas was transported home. Further investigation revealed a violent relationship with the victim. Moore had in place a peace bond against Dyas.
 

 Corporal Patrick McConnell and Detective Eric Farquhar interviewed Dyas a second time. This interview was recorded and Dyas was informed that he was being interviewed as a “person of interest” in the first degree |2murder investigation. At some point, it was learned that Dyas had several outstanding warrants for his arrest. Dyas was briefly left alone in the investigator’s office. Moore’s cell phone was also left in the office at that time.
 

 At the city jail, Dyas spit out his gum. McConnell heard something hard hit the floor. Farquhar saw Dyas expel a small piece of plastic from his mouth.
 

 Farquhar retrieved the item and recognized it to be a SIM
 
 [1]
 
 card from a cellular telephone. Dyas initially said the card had been in the trash can and was hit by his gum. When challenged, Dyas admitted concealing the card in his mouth, explaining that the card was from his phone and that he removed it because he had a previous experience involving his SIM card being stolen when he had been arrested. Dyas asked that all his belongings be given to his brother.
 

 Farquhar discovered that Dyas’s phone already had a SIM card in it, while the card from Moore’s phone was missing. The card retrieved from Dyas was placed in Moore’s phone and the phone’s previous settings returned.
 

 Dyas’s arrest, conviction, and sentencing followed for obstruction of justice. He was adjudicated as a second felony offender and sentenced. He now appeals.
 

 |.,DISCUSSION
 

 Sufficiency
 

 Dyas alleges the state failed to present sufficient evidence to prove the
 
 *367
 
 essential elements of the charged offense, particularly including that:
 

 • he knew or had reason to know that the taking of the cell phone SIM card could affect a future criminal proceeding;
 

 • he had specific intent to distort the results of that proceeding; and/or
 

 • the evidence from the SIM card was reasonably likely to be relevant to a future criminal proceeding.
 

 La. R.S. 14:130.1 provides, in part:
 

 A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:
 

 (1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:
 

 (a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or
 

 (b) At the location of storage, transfer, or place of review of any such evidence.
 

 Our law on review for sufficiency of the evidence is well settled.
 
 [2]
 

 
 *368
 
 14Mike Hood, a Shreveport Fire Department investigator, was accepted |Bby the court as an expert in the determination of the origin and cause of fires. Hood testified that:
 

 • he was called out to 3127 Poland Street on November 26, 2007;
 

 • en route, he learned that two victims had been found in the fire;
 

 • upon arrival, he observed that the fire had been extinguished and a female victim had been pulled from the house by firefighters;
 

 • the “obvious trauma” to the body suggested her death had not been caused by the fire;
 

 • the body of a male was found in a bedroom in the back of the house, also with trauma that had not been caused by the fire;
 

 • the back bedroom sustained the heaviest damage, and a knife blade was found amidst the debris in this room;
 

 • the knife handle was broken off and dried blood was on the knife blade; and
 

 • he found four points where different fires had been set.
 

 Patrick McConnell, an investigator with the Shreveport Police Department’s violent crimes unit, testified regarding his training and duties during his 14 years with the police department. He further testified that:
 

 • he was the primary or lead investigator assigned to the case;
 

 • he identified the female victim as Jac-quetta “Jackie” Moore;
 

 • the male victim was initially thought to be Dyas, Moore’s boyfriend;
 

 • based on this belief, McConnell went to Dyas’s residence in an attempt to determine if he was the second victim from the home;
 

 • Dyas was found there and was questioned about the crime;
 

 • Dyas was not arrested or considered a suspect when first interviewed;
 

 • Dyas later became a suspect and was re-interviewed in McConnell’s office;
 

 
 *369
 
 | fi* during the recorded interview, Dyas was advised of his
 
 Miranda
 
 rights and informed that he was a “person of interest” in the first degree murder investigation;
 

 • a redacted version of the interview was played for the jury;
 

 • McConnell determined that Dyas had several outstanding warrants;
 

 • Moore’s telephone had been recovered from the fire scene and was in his office, on his desk, at the time of the interview;
 

 • McConnell stated it was routine to have evidence in the office until it was transferred to the property room;
 

 • prior to the interview with Dyas, McConnell and Farquhar had made attempts to access the phone’s data but were unsuccessful;
 

 • when powered up, the cell phone displayed “Jackie”;
 

 • Dyas was briefly left alone in the office with the cell phone;
 

 • Dyas was transported to the city jail in a police vehicle;
 

 • as Dyas exited the vehicle, he spit out gum into a trash can;
 

 • McConnell heard a “tinkling noise like a piece of high-impact plastic skipping across the pavement”;
 

 • he retrieved the small piece of plastic and asked Dyas where it had come from;
 

 • Dyas said it fell from the trash can when he spit the gum into the can;
 

 • Farquhar had seen the piece come from Dyas’s mouth;
 

 • the officers retrieved the piece and recognized it to be a SIM card;
 

 • when Dyas was asked why he put the SIM card in his mouth, he replied that he had taken the card from his phone because he had been arrested before and the card had been stolen by jailers and he did not want that to happen again;
 

 • Dyas told the officers he wanted the SIM card as well as his phone and other property to be given to his brother;
 

 • Dyas was then booked into the Shreveport city jail;
 

 17* as McConnell and Farquhar were leaving the city jail, Farquhar asked him if they should secure the small SIM card, and McConnell suggested it be put back into Dyas’s phone;
 

 • when Farquhar opened Dyas’s phone to reinsert the SIM card, another card was already in the phone;
 

 • McConnell believed the SIM card could have come from Moore’s phone so he called to have another detective check for the SIM card;
 

 • the SIM card was determined to be missing from Moore’s phone;
 

 • when the detectives arrived at their office, the mystery SIM card was inserted into Moore’s phone, and her settings appeared;
 

 • the officers attempted to access the information in Moore’s phone because they knew she was in the habit of text-ing quite a bit and they thought the information would be helpful to the investigation;
 

 • the cell phone subscriber advised that Dyas and Moore sent over 1,860 text messages to each other between July and August;
 

 • when the phone was later unlocked, all text messages had been deleted;
 

 • subsequently, Dyas contacted the detectives to speak with them;
 

 • a redacted recording of the interview was played for the jury;
 

 • during the interview, Dyas admitted taking the SIM card from Moore’s phone in an attempt to conceal it;
 

 • he said that he took the card to find which persons Moore had been commu
 
 *370
 
 nicating with, as well as wanting to save her reputation;
 

 • McConnell didn’t know whether saliva would affect the SIM card; and
 

 • records obtained from Cingular reflected activity on the phone but not the content of the text messages or voice mails.
 

 Eric Farquhar testified that:
 

 • he was the secondary investigator on the case;
 

 • Moore’s mother initially identified Dyas as her daughter’s boyfriend;
 

 lx* Since Dyas was not a suspect at the time of the first interview, he was not advised of his
 
 Miranda
 
 rights;
 

 • on all subsequent interviews, Dyas was advised of his
 
 Miranda
 
 rights and he was made aware of the nature of the investigation;
 

 • when Dyas was left in the office alone with Moore’s cell phone, he had an opportunity to take the SIM card;
 

 • Farquhar had been trying for several days to unlock the code on the phone;
 

 • he was present when Dyas exited the vehicle at the city jail;
 

 • he saw Dyas spit the object from his mouth;
 

 • he picked it up and identified it as a SIM card;
 

 • he inserted the SIM card into Moore’s phone, after determining that the SIM card was not from Dyas’s phone;
 

 • when the detectives found the code to unlock Moore’s phone, there was no information regarding calls or text messages stored on the phone;
 

 • Dyas indicated he took the card to protect Moore’s reputation;
 

 • Farquhar noted that information from cell phones is generally helpful in that it can be used to further an investigation by providing leads;
 

 • he opined that the SIM card may have been damaged when it was removed;
 

 • a delay in obtaining information from a victim’s cell phone could delay or hinder an investigation and the ability of the detectives to develop a suspect;
 

 • despite the fact that some records were obtained from the cell phone service provider, he testified that their investigation was hindered because of the stolen SIM card.
 

 The state rested its case after Farqu-har’s testimony and the defendant exercised his right not to testify. He presented no witnesses.
 

 The evidence was sufficient to convict Dyas of the charged offense. The state was able to prove that the defendant, with full knowledge of the |nongoing murder investigation, took the SIM card from the victim’s cell phone. There was no reason for him to do this unless he knew that the cell phone might have helped the officers.
 

 Dyas argues that the state failed to prove that he knew or had reason to know that taking the cell phone SIM card could affect a future criminal proceeding. Testimony from the investigators indicated that Dyas reported one of his reasons for taking the SIM card was to prevent exposure of the victim’s drug usage. Dyas knew taking the SIM card would prevent the investigators from discovering information pertaining to the case. Dyas knew or should have known that his actions would affect the criminal proceedings.
 

 Dyas also argues that the state failed to prove that he had the specific intent to distort the results of that proceeding. The state proved through the testimony of its witnesses that Dyas did in fact indicate it was his intention to prevent the disclosure of certain information pertaining to the victim. Despite the defendant’s innocent explanations for his actions, the jury could
 
 *371
 
 reasonably infer that he did in fact intend to distort the results of the investigation.
 

 Dyas also argues that the state failed to show that the evidence from the SIM card was reasonably likely to be relevant to the future criminal proceeding. Both detectives testified that the information could have been helpful.
 

 The testimony of the state’s witnesses showed that Dyas intentionally took evidence (victim’s cell phone) from the location of storage, transfer, or 11ftplace of review of any such evidence with the intent of altering the outcome of the investigation. By his own admission in one of his reasons for taking the SIM card, Dyas indicated that he intended to preserve the reputation of the victim, if evidence of her drug usage was to be found on the SIM card. Dyas had been informed that he was a person of interest in the ongoing investigation, and it can be inferred from his actions that he intended the consequences, which were to deprive the investigators of the information contained on the SIM card.
 

 Excessiveness
 

 Defendant argues that his sentence was too harsh, considering all factors, while the state counters that Dyas received a midrange sentence which was clearly deserved. Our law on review for excessiveness of sentence is well settled.
 
 [3]
 

 
 *372
 
 |1tAs a second felony offender, defendant’s sentencing exposure was 20 to 80 years of imprisonment. La. R.S. 14:180.1 and La. R.S. 15:529.1. He was sentenced to 40 years at hard labor without benefit of probation or suspension of sentence. He was also fined. The trial court gave extensive and appropriate consideration to the defendant’s social history and criminal background. The trial court noted the voluminous correspondence it had received from family members, relatives, and acquaintances of the defendant as well as the murder victims.
 

 During the sentencing hearing, the trial judge reviewed the defendant’s criminal history, including two serious offenses committed as a juvenile in 1989.
 
 [4]
 
 Dyas’s adult record included traffic offenses, resisting an officer, driving under suspension, and forgery, which was the predicate for the adjudication.
 

 Dyas’s criminal history included simple battery charges. The trial court noted that Dyas had previously benefited from leniency but that now he was not a candidate deserving of a downward departure from the |,.¿multiple offender sentencing brackets. This midrange sentence does not shock the sense of justice.
 

 Error Patent Review
 

 Dyas was also fined $10,000. In
 
 State v. Dickerson,
 
 584 So.2d 1140 (La. 1991), the Louisiana Supreme Court held the following:
 

 La. R.S. 15:529.1 requires that the sentencing judge vacate the original sentence and resentence the defendant as a multiple offender. In resentencing, the judge must impose a sentence authorized by La. R.S. 15:529.1. That statute does not authorize the imposition of a fine, but only provides for enhanced sentences relating to the term of imprisonment. The trial judge was therefore without authority to impose a fine on resentencing under La. R.S. 15:529.1.
 

 DECREE
 

 The defendant’s conviction is affirmed. The sentence is amended to delete the $10,000 fine, and, as amended, the sentence is affirmed.
 

 CONVICTION AFFIRMED; SENTENCE AMENDED, AND, AS AMENDED, AFFIRMED.
 

 [1]
 

 . A SIM card or Subscriber Identity Module is a portable memory chip used in some models of cellular telephones. The card simplifies switching to a new phone by simply sliding the SIM out of the old phone and into the new one, thereby transferring personal identity information, cell phone number, phone book, text messages and other data.
 

 [2]
 

 . The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 2001-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Carter,
 
 42,894 (La.App.2d Cir. 1/9/08), 974 So.2d 181,
 
 writ denied,
 
 2008-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App.2d Cir. 1/14/09), 1 So.3d 833,
 
 writ denied,
 
 2009-0310 (La. 11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a juiy's decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685,
 
 writ denied,
 
 2009-0725 (La. 12/11/09), 23 So.3d 913;
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529.
 

 The
 
 Jaclcson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La. 1983);
 
 State v. Speed,
 
 43,786 (La.App.2d Cir. 1/14/09), 2 So.3d 582,
 
 writ denied,
 
 2009-0372 (La. 11/6/09), 21 So.3d 299;
 
 State v. Parker,
 
 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497,
 
 writ denied,
 
 2007-2053 (La.3/7/08), 977 So.2d 896.
 

 Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
 
 State v. Speed, supra; State v. Allen,
 
 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622,
 
 writs denied,
 
 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255,
 
 *368
 

 cert. denied,
 
 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,-032 (La.App.2d Cir.2/13/08), 975 So.2d 753;
 
 State v. Burd,
 
 40,480 (La.App.2d Cir. 1/27/06), 921 So.2d 219,
 
 writ denied,
 
 2006-1083 (La. 11/9/06), 941 So.2d 35.
 

 The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law.
 
 State
 
 v.
 
 Casey,
 
 99-0023 (La. 1/26/00), 775 So.2d 1022,
 
 cert. denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
 

 Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.
 
 State v. Lilly,
 
 468 So.2d 1154 (La.1985);
 
 State v. Mims,
 
 39,757 (La.App.2d Cir.6/29/05), 907 So.2d 237;
 
 State v. Turner,
 
 591 So.2d 391 (La.App.2d Cir.1991),
 
 writ denied,
 
 597 So.2d 1027 (La. 1992).
 

 An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Jacobs,
 
 504 So.2d 817 (La.1987);
 
 State v. Adkins,
 
 39,724 (La.App.2d Cir.6/29/05), 907 So.2d 232,
 
 writ denied,
 
 2006-2514 (La.5/4/07), 956 So.2d 607;
 
 State v. Lott,
 
 535 So.2d 963 (La.App. 2d Cir. 1988).
 

 [3]
 

 . The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article.
 
 State v. Smith,
 
 433 So.2d 688 (La. 1983);
 
 State v. Lathan,
 
 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890,
 
 writ denied,
 
 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La. 1982);
 
 State v. Swayzer,
 
 43,350 (La. App.2d Cir.8/13/08), 989 So.2d 267,
 
 writ denied,
 
 2008-2697 (La.9/18/09), 17 So.3d 388. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La. 1981);
 
 State v. Ates,
 
 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259,
 
 writ denied,
 
 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Shumaker,
 
 41,547 (La.App.2d Cir. 12/13/06), 945 So.2d 277,
 
 writ denied,
 
 2007-0144 (La.9/28/07), 964 So.2d 351.
 

 Second, a sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La. 1/14/03), 839 So.2d 1;
 
 State
 
 v.
 
 Dorthey,
 
 623 So.2d 1276 (La.1993);
 
 State v. Bonanno,
 
 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 2001-0467 (La. 1/15/02), 805 So.2d 166;
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992);
 
 State v. Robinson,
 
 40,983 (La.App.2d Cir. 1/24/07), 948 So.2d 379;
 
 State v. Bradford,
 
 29,519 (La. App.2d Cir.4/2/97), 691 So.2d 864.
 

 In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity.
 
 State v. Pamilton,
 
 43,112 (La.App.2d Cir.3/19/08), 979 So.2d 648,
 
 writ denied,
 
 2008-1381 (La.2/13/09), 999 So.2d 1145;
 
 State v. Boyte,
 
 42,763 (La.App.2d Cir. 12/19/07), 973 So.2d 900,
 
 writ denied,
 
 2008-0175 (La.6/20/08), 983 So.2d 1272. The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence,
 
 e.g.,
 
 hearsay and arrests, as well as conviction records.
 
 State v. Myles,
 
 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof the defen
 
 *372
 
 dant committed the other offenses.
 
 State v. Doyle,
 
 43,438 (La.App.2d Cir.8/13/08), 989 So.2d 864.
 

 [4]
 

 . Armed robbery and illegal carrying of a weapon.