PEATROSS, J.
|2Plaintiff Phillip Hall appeals a summary judgment rendered in favor of Defendant insurer Federated Mutual Insurance Company, Inc. (“Federated Mutual”). For the reasons set forth herein, we affirm.

FACTS

On April 2, 2009, Mr. Hall was involved in an automobile accident while in the course of his employment with Spillers Oil Company (“Spillers Oil”). Mr. Hall was a truck driver for Spillers Oil and worked out of the company’s Bonita, Louisiana, office, along with one other employee, a receptionist/clerk. Mr. Hall was not at fault in the accident — his truck was struck head-on by another vehicle and Mr. Hall sustained serious injuries. At the time of the accident, Federated Mutual had in effect an insurance policy for Spillers Oil. *729 The policy limit for bodily injury was $1,000,000 and the reduced selected UM coverage for officers of the company was $100,000. The question on summary judgment was whether there was UM coverage under this policy for Mr. Hall. The specific issue was whether Spillers Oil, through David Ouellette, an owner and officer of Spillers Oil, had validly rejected UM coverage for its non-officer employees and whether Mr. Hall was an “officer” of Spil-lers Oil. It is undisputed that Mr. Ouel-lette’s intent was to reject UM coverage for all non-officer employees of Spillers Oil, but there was one box left unchecked on the UM rejection form. The trial judge found that the failure to check the box was an oversight and further found that, as a matter of law, Mr. Ouellette had validly rejected UM coverage for employees who were not officers and that |sMr. Hall was not an officer of the company. Summary judgment was, therefore, rendered in favor of Federated Mutual; and, in a subsequent judgment, Federated Mutual was dismissed from the suit. This appeal by Mr. Hall ensued.

DISCUSSION

A motion for summary judgment shall be granted if “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
Under Louisiana law, UM coverage is automatic. La. R.S. 22:1406(D)(l)(a). UM coverage is strongly favored under the law. A rejection of UM coverage must be unambiguous and in proper form. The burden of proving a valid UM rejection rests on the party seeking to enforce the rejection and escape UM liability. Henson v. Safeco Ins. Cos., 585 So.2d 534 (La.1991). In the case sub judice, it is undisputed that the rejection forms used are in compliance with the Commissioner of Insurance requirements pursuant to La. R.S. 22:1295 and that Mr. Ouellette had authority to reject the UM coverage. The only issues, therefore, are whether |4the rejection was valid as a matter of law and, if not, whether Mr. Hall was an officer of the company.
There are two UM forms at issue in this case. The first form is entitled “UNINSURED/UNDERINSURED MOTORIST BODILY INJURY COVERAGE FORM” and is the standard rejection form for UMBI coverage. On this form, Mr. Ouel-lette initialed on the line by option number 5, which states “I do not want UMBI coverage. I understand that I will not be compensated through UMBI coverage for losses arising from an accident caused by an uninsured/underinsured motorist.” Mr. Ouellette signed and dated the bottom of the form.
The second form is entitled “LOUISIANA COMMERCIAL AUTO OPTIONAL COVERAGE FORM” and is used in addition to the standard UMBI rejection form and offers the insured the options of selecting economic loss-only coverage, UM coverage at lower limits than the bodily injury limits provided in the liability portion of the policy or lower limits for directors, officers, partners or owners of the insured. On this form, there are four possible options. The second option reads, “I hereby SELECT economic-only UMBI coverage which will compensate me only for my economic losses at the limit select *730 ed below.” The box next to this option is unchecked. Directly below this option is listed the specific choices of limitation of coverage available to the insured. Mr. Ouellette checked the box next to $100,000 under the heading “Limit for directors, officers, partners or owners of the named insured[-].” In addition, under the adjacent heading, “Limit for any other person who qualifies as an insured,” |fiMr. Ouel-lette checked the box next to the option that reads, “I hereby REJECT Uninsured Motorist Insurance including Underin-sured Motorist Insurance for this group of persons only.” Mr. Ouellette then signed and dated the bottom of the form. It was the failure of Mr. Ouellette to place a check mark in the box next to the second option, above the specific limits he selected, which forms the basis of Mr. Hall’s challenge to the validity of the rejection as a whole.
The following six factors must be met in order to satisfy the requirement of a valid UM rejection:
(1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen, then filling in the amount of coverage selected for each person and accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date. Duncan v. U.S.A.A. Insurance Co., 06-363 (La.11/29/06), 950 So.2d 544.
In Duncan, the supreme court explained:
The commissioner of insurance, in drafting the form, requires six tasks, all of which we find to be pertinent in rejecting UM coverage. The insured initials the selection or rejection chosen to indicate that the decision was made by the insured. If lower limits are selected, then the lower limits are entered on the form to denote the exact limits. The insured or the legal representative signs the form evidencing the intent to waive UM coverage and includes his or her printed name to identify the signature. Moreover, the insured dates the form to determine the effective date of the UM waiver. Likewise, the form includes the policy number to demonstrate which policy it refers to.
| (¡Subsequently, in Gray v. American Nat. Property & Cas. Co., 07-1670 (La.2/26/08), 977 So.2d 839, the supreme court further defined its earlier ruling in Duncan to hold that the form must be completed prior to signing by the insured in order to constitute a valid rejection:
We now hold that compliance with the form prescribed by the Insurance Commissioner involves more than the rote completion of the “six tasks” identified in Duncan by someone at sometime. Instead, we find that, in order for the form to be valid, the six tasks must be completed before the UM selection form is signed by the insured, such that the signature of the insured or the insured’s representative signifies an acceptance of and agreement with all of the information contained on the form.
Again, Mr. Hall asserts that the fatal deficiency in the rejection of UM coverage is that the box on the second form which indicates a selection of economic-only UMBI coverage is unchecked. Mr. Hall argues that Gray, supra, dictates that the form must be completed prior to signing by the insured in order to be a valid rejection and that failure to comply with the proper confection of a UM rejection is not subject to reformation. Mr. Hall asserts that the insurer is responsible for making sure the form is completely filled out, Gray, supra, and that the Federated Mutual insurance agent admitted *731 that it was his oversight that the box was not checked on the UM rejection form at issue. He claims that this makes the form incomplete and, therefore, invalid. We disagree.
We concur with Federated Mutual that all six of the Duncan requirements for a valid UM rejection form were met when these two forms are considered. The forms clearly indicate that Mr. Ouellette was opting to reject all UM coverage except for officers, directors, partners, owners or family members for whom he selected a reduced UM coverage limit of $100,000. We conclude that the trial court correctly held that a “mere |7oversight” should not be allowed to invalidate the rejection. We further agree that Gray, supra, is factually distinguishable and, thus, not controlling, since Mr. Ouellette completed the forms prior to signing them.
We note that Mr. Hall argues that the Federated Mutual insurance agent conceded in his testimony that he was responsible for the oversight. The agent’s acceptance of responsibility, however, does not affect the legal validity of Mr. Ouellette’s UM coverage rejection or the legal efficacy of the rejection forms at issue. In summary, we find that the trial court properly concluded that the UM rejection forms at issue are valid as a matter of law.
Alternatively, Mr. Hall argues that he is an officer of Spillers Oil and, thus, is entitled to UM coverage up to $100,000. At the hearing on the motion for summary judgment, Mr. Hall presented testimony that he “managed” or “ran” the Bonita office and that he made purchases from various vendors for the business. We are not persuaded by Mr. Hall’s argument. Mr. Hall was employed as a truck driver in the Bonita office of Spillers Oil and had no authority to transact business for the company. The trial judge correctly opined that it would be “absurd” to consider Mr. Hall an officer of Spillers Oil. Accordingly, Mr. Hall is not a covered insured under the limited coverage afforded to officers, directors, partners or owners of Spillers Oil.

CONCLUSION

For the foregoing reasons, the summary judgment in favor of Federated Mutual Insurance Company and dismissing it from the suit is affirmed at the cost of Phillip Hall.
AFFIRMED.