CARAWAY, J.
^Plaintiff, who was charged with the crime of murder, brought this action for claims against appellees for false arrest, malicious prosecution, and defamation surrounding his arrest. Appellees sought and obtained dismissal by summary judgment upon the assertion of probable cause for plaintiffs arrest and a qualified privilege against the claim of defamation. We affirm the judgment dismissing all of appellant’s claims.

Facts and Procedural Background

The plaintiff, Patrick Dewayne Dyas (“Dyas”), was arrested on two counts of first degree murder which were never prosecuted. Dyas later filed this suit against the City of Shreveport and Detective Patrick McConnell (“McConnell”) for the false imprisonment and malicious prosecution and defamation.[1] The essential facts of this case surround a murder investigation for the deaths of Jacquetta Moore (“Moore”) and Cedric Davidson (“Davidson”). On November 26, 2007, the Shreveport Fire Department responded to a fire and discovered two bodies in a burned dwelling. After discovering stab wounds on Moore, detectives McConnell and Eric Farquhar (“Farquhar”) began investigating the scene for possible murders.
McConnell wrote a detailed and lengthy narrative of his investigation of the deaths, which was submitted in support of summary judgment. After initial investigation, Dyas, who had been romantically involved with Moore, became a person of interest in the two murders. Because of pending traffic ^charges, McConnell and Farquhar brought in Dyas for questioning, Mirandizing him before the interview. Dyas denied any involvement in the murders. During the course of this interview, McConnell had Moore’s cellphone and was attempting to unlock it to inspect its contents for evidence. He asked Dyas if he knew the- code to unlock the phone, and Dyas responded that he did not. McConnell then exited the room, leaving Dyas and the cellphone. Later, Dyas was to be booked and held for outstanding warrants on unpaid traffic tickets. Before leaving the office, Dyas asked for gum, and McConnell gave him some.
When McConnell and Farquhar arrived at the city jail, Dyas spat out his gum toward a trash can. However, the gum hit the floor, and McConnell heard something hit the floor, making a “tinkling” sound. Farquhar discovered that Dyas had spat out something plastic. At first, Dyas claimed that it was something that stuck to the gum when he spat it toward the trash can and was knocked off. However, upon being pressed on the issue, he admitted that it was a subscriber identity module, or SIM card, for his phone. He claimed that on a previous occasion, his SIM card had been stolen when he was arrested.
After leaving the city jail, Farquhar discovered that Dyas’s phone still had a SIM card in it and that Moore’s phone was missing its SIM card. The SIM card that Dyas spat out at the jail was placed in Moore’s phone, and her settings were restored. Subsequently, Dyas was charged with obstruction of justice on November 27, 2007. Dyas was formally charged by bill of information on January 10, 2008, with obstruction of justice. His bond was set initially at $1.3 million, but it was sub *901 sequently lowered to $100,000. [¡¿Dyas never posted bond.
During the next few weeks, McConnell and Farquhar interviewed numerous people who knew Moore, Davidson, and Dyas, including neighbors, friends, and coworkers. Soon, it became clear that Dyas and Moore had split up or were on the verge of splitting up. Moore was becoming romantically involved with Davidson. From the interviews, Dyas appeared to be jealous of any potential relationship Moore might have had with others.
The detectives learned that Dyas had a violent history with Moore and with other women. They also learned that Dyas had possibly shot several men who he suspected may have been involved with a past love interest. Some witnesses stated that they had seen Dyas parking his vehicle away from Moore’s home, and others indicated they had seen him standing near the home watching it while wearing dark clothing at night.
McConnell also learned that Dyas was being investigated for an unrelated arson. Moore’s home was determined to have been intentionally set on fire because about six fires had originated from different parts of the house. In the house, the police found a bottle of charcoal lighter fluid, and forensics showed that Dyas’s fingerprints were on the bottle. Additionally, during a later search of the home the detectives found a bloody knife blade consistent with the size of the stab wounds. The handle of this blade was missing. After further investigation, it was determined that Dyas was a cook on an oil barge offshore and that he had access to such knives.
On the night of Moore’s death, Dyas and Moore, via text message and voice calls, had been discussing having dinner. Some of the text messages |4within the text message dialogue had inexplicably been deleted. Phone records indicated that most of the text message activity and calls between Moore and Dyas had gone on for hours until around 1:00 a.m., shortly before Moore and Davidson were believed to be murdered.
Following this investigation, McConnell and Farquhar on February 15, 2008, charged Dyas with the first degree murders of Moore and Davidson. During the interviews and after the charges for the double homicide, Dyas received media attention, including newspaper stories reporting the crime, the investigation, and the legal proceedings involving the murders. However, after determining that there was insufficient evidence to convict Dyas of the murder charges, the Caddo Parish District Attorney decided not to pursue the charges against him. The investigation for the murders is still open, and no one was ever formally charged.
Meanwhile, Dyas was convicted of obstruction of justice and adjudicated a habitual felony offender. He was sentenced to 40 years in prison. This court affirmed the conviction in State v. Dyas, 45,065 (La.App.2d Cir.3/3/10), 32 So.3d 364, writ denied, 10-0759 (La. 11/19/10), 49 So.3d 397.
In Dyas’s petition, he argued that he was wrongfully accused publicly of first degree murder and that McConnell and Farquhar accused him of being guilty of the crimes before the district judge at the bond hearing. He also claimed that he was wrongfully incarcerated for 15 months as the result of these charges. He contended that he lost his home and custody of his child and that he suffered from depression and mental anguish at the hands of the officers.
| sThe City of Shreveport and McConnell sought summary judgment in 2013. Dyas filed a cross-motion for summary judg *902 ment. On April 29, 2013, the trial court granted defendants’ summary judgment and dismissed all of Dyas’s claims with prejudice. Dyas appeals the dismissal of his claims.[2]

Discussion

When an appellate court reviews a district court' judgment on a motion for summary judgment, it applies the de novo standard of review, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Henderson v. Bailey Bark Materials, 47,946 (La.App.2d Cir.4/10/13), 116 So.3d 30; Gray v. American Nat. Property & Cas. Co., 07-1670 (La.2/26/08), 977 So.2d 839 (citations omitted); Hall v. Federated Mut. Ins. Co., 46,806 (La.App.2d Cir.12/14/11), 80 So.3d 727. After adequate discovery or after a case is set for trial, a motion for summary judgment which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966(C)(1).
The burden of proof on a motion for summary judgment remains with the mov-ant. La. C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s |f,claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Id. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id.
On appeal, the City of Shreveport and McConnell argue that Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), bars Dyas’s claims because they would call into question the validity of Dyas’s obstruction of justice conviction.[3] However, we will focus instead on Dyas’s claims regarding his arrest on the first degree murder charges.

False Arrest and Malicious Prosecution

First we consider Dyas’s false arrest and malicious prosecution claims. The malicious prosecution fails because no prosecution on the murder charges was ever instituted.[4] Regarding the false imprisonment claims, Dyas failed to show that the arrest and charges for first degree murder lacked probable cause.
False arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority. Kyle v. City of New Orleans, 353 So.2d 969 (La.1977). *903 Thus, if police officers act pursuant to statutory authority in arresting and incarcerating a citizen, they are not liable for damages for false arrest and imprisonment. Id. 17Louisiana Code of Criminal Procedure Article 213 provides that a peace officer may arrest a person without a warrant when the peace officer “has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer,” La.C.Cr.P. art. 213(3). See also Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).
The common element between a malicious prosecution claim and a false arrest claim is the absence of probable cause. To recover for malicious prosecution, a plaintiff must show the underlying prosecution lacked probable cause. Hibernia Nat’l Bank of New Orleans v. Bolleter, 390 So.2d 842 (La.1980); LeBlanc v. Pynes, 46,393 (La.App.2d Cir.7/13/11), 69 So.3d 1273. False arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority. Kyle, supra. That statutory authority is La.C.Cr.P. art. 213, and it requires that the peace officer have “reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer.” La.C.Cr.P. art. 213(3). Reasonable cause to arrest without a warrant is the equivalent of probable cause to obtain an arrest warrant. State v. Powell, 598 So.2d 454 (La.App.2d Cir.1992). Therefore, if there was probable cause to arrest, then there is no false arrest cause of action.
Probable cause exists when facts and circumstances within the arresting officer’s knowledge and of which he has reasonable and trustworthy information are sufficient to justify a person of average caution in the belief that the person to be arrested has committed or is committing an offense. Id. Mere suspicion will not justify an arrest, but proof sufficient to convict is not required. Id.
| ^Regarding Dyas’s arrest for the first degree murders of Moore and Davidson, McConnell had adequate probable cause to support the charges. McConnell in the course of the investigation recorded a detailed narrative. The narrative showed that the detectives interviewed many people who knew the victims and Dyas. The picture that was painted was one of a potentially violent man who was jealous that his ex-girlfriend was seeing someone else. He had been seen watching Moore’s house. His fingerprints were on a lighter fluid bottle at the scene where several fires had been set, and Dyas had previously been investigated for arson. Further, a knife was found without a handle and was of a type which Dyas had access in his job as a cook. Phone records showed that Dyas and Moore were talking and texting up to a point shortly before her death, and several text messages in the dialogue had been deleted. Additionally, Dyas attempted to destroy a SIM card for Moore’s phone during the course of the investigation. These facts, although potentially insufficient to convict Dyas of first degree murder, were certainly enough to make a reasonable person suspicious that he had. Powell, supra.
We also note that when Dyas was charged with murder, he had already been arrested and was already in custody for the crime of obstruction of justice, for which he was convicted.
In opposition to the defendants’ motion for summary judgment and in support of his own cross-motion, Dyas submitted only (1) a request for production of documents, which have no evidentiary value regarding probable cause, (2) a family counselor’s report to a judge in a custody proceeding *904 referencing the criminal charges, (3) arrest reports for first ^degree murder with a detailed description of the probable cause for the charges, and (4) two pages of McConnell’s narrative of the investigation, which as noted above contained ample probable cause to justify the charges and arrests. Therefore, Dyas failed to put on any evidence that his arrest and prosecution for murder or obstruction of justice lacked probable cause. The motion for summary judgment dismissing the claim for false imprisonment was proper.[5]

Defamation and Qualified Privilege

We now turn to Dyas’s defamation claim. For a defamation claim, a plaintiff must establish the following necessary elements: (1) a false and defamatory statement concerning another person; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. Kennedy v. Sheriff of East Baton Rouge, 05-1418 (La.07/10/06), 935 So.2d 669 (citations omitted).
In Louisiana, words that expressly or impliedly accuse another of criminal conduct without considering extrinsic facts or circumstances, are considered defamatory per se. Id. When a plaintiff proves publication of words that are defamatory per se, falsity, malice (or fault), and injury are presumed, but may be rebutted by the defendant. Id.
In Louisiana, privilege is a defense to a defamation action. Id. A conditional or qualified privilege applies if the statement is made (1) in good Imfaith, (2) on any subject matter of which the person communicating has an interest or in reference to which he has a duty, (3) to a person having a corresponding interest or duty. Id. Societal necessity requires unrestricted communication of such matters without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate. Id.
Determining whether a qualified privilege exists involves a two-step process. Id. First, it must be determined whether the attending circumstances of a communication occasion a qualified privilege. Id. Second, it must be determined whether the privilege was abused, which requires that the grounds for abuse — malice or lack of good faith — be examined. Id. The second step of determining malice or abuse of the privilege is generally a question of fact for the jury unless only one conclusion can be drawn from the evidence. Id.
The defendant abuses the privilege if he (1) knows the matter to be false or (2) acts in reckless disregard as to its truth or falsity. Id. Only those statements made with a high degree of awareness of their probable falsity meet the reckless disregard standard. Id. The plaintiff must prove that the publication was deliberately falsified or published despite the publisher’s awareness of probable falsity. Id.
In Trentecosta v. Beck, 96-2388 (La.10/21/97), 703 So.2d 552, the Louisiana Supreme Court determined that a qualified privilege exists in favor of police officers publishing information concerning an ongoing | T1investigation to the news media, *905 but the court determined that the police had abused the privilege. In so holding, the court stated:
While we agree that law enforcement officers, whose duty includes charging persons with crimes, should be allowed to report the fact of a criminal investigation and an arrest without fear of a defamation action if the person is cleared of the charges, an officer cannot add additional injurious statements that the officer had no reason to believe were true. Such a restriction of the privilege should not have a chilling effect on the free reporting of criminal investigations and arrests, but should prevent occurrences ... where the officer not only reported the investigation and arrest, but also reported facts pertaining to guilt that were not developed in the investigation.
The practical effect of the assertion of the conditional or qualified privilege is to rebut the plaintiffs allegations of fault and to place the burden of proof on the plaintiff to establish abuse of the privilege. Kennedy, supra.
Dyas provided only the evidence mentioned above. The record also reflects that several newspapers covered the investigation and trial of Dyas. This is the only evidence of a statement made from the police to the media. McConnell and Far-quhar made statements to the prosecuting attorneys, the court, and the media that Dyas committed murder and obstruction of justice. Therefore, as statements that Dyas committed criminal acts, they were defamatory per se. Thus, the burden of proof shifted to the defendants to show that the statements were not false, that fault was absent, and that no injury occurred. See Kennedy, supra.
However, McConnell and Farquhar are police officers who enjoy a qualified privilege. Any statements they made to the media concerning the investigation and the arrest are subject to a qualified privilege. See Trentecosta, supra. Furthermore, any statements that they made pursuant to their duty to notify the district attorney and the district judge of the charges 112and facts of the crime are likewise conditionally privileged. There was no indication that the officers added injurious statements beyond the facts they relied upon for the showing of probable cause. Therefore, McConnell and Farquhar cannot be liable for such statements properly communicated in performance of their duties. See Trentecosta, supra; see also Kennedy, supra.
There was no showing by Dyas that McConnell and Farquhar (1) knew their statements to be false or (2) acted in reckless disregard as to their truth or falsity. See Kennedy, supra. Again, none of the evidence that Dyas submitted with the motion for summary judgment gave any indication that McConnell and Farquhar knew their statements were false or that they had a high degree of awareness that the statements were probably false. As a result, Dyas failed to show that he could meet his burden of proof at trial. Therefore, his claim for defamation fails.

Conclusion

Because Dyas failed to show that McConnell and Farquhar acted without probable cause, his claims for false arrest and malicious prosecution fail. Further, because Dyas failed to produce any evidence that McConnell and Farquhar abused their qualified privilege, the trial court’s judgment dismissing the defamation claim was also correct. Costs of the appeal are assessed to appellant.
AFFIRMED.

. Initially, Dyas named the Shreveport Police Department. After an exception of lack of procedural capacity was filed because the police department is not a legal person capable of being sued, he amended his petition to name the City of Shreveport. All pleadings and motions on behalf of the appellees named only the City of Shreveport and Patrick McConnell and do not include a third named defendant, Eric Farquhar.

. Dyas also appeals the trial court's revocation of his pauper status. However, this court reinstated his pauper status in Writ No. 48,-571-CW on July 11, 2013. The pauper status has not since been revoked. Therefore, this issue is moot on this appeal.

. Under Heck, for a plaintiff to recover damages under 42 U.S.C. § 1983, for unconstitutional conviction or imprisonment, he must prove (1) that the conviction or sentence has been reversed on direct appeal, (2) expunged by executive order, (3) declared invalid by a state tribunal authorized to make such determination, or (4) called into question by a federal court’s issuance of a writ of habeas corpus. Heck, 512 U.S. at 486-87, 114 S.Ct. 2364.

.A successful claim for malicious prosecution requires proof of the commencement or continuance of an original criminal or civil judicial proceeding. Hibernia Nat’l Bank of New Orleans v. Bolleter, 390 So.2d 842 (La.1980); LeBlanc v. Pynes, 46,393 (La.App.2d Cir.7/13/11), 69 So.3d 1273.

. We also note that insofar as Dyas made a claim under 42 U.S.C. § 1983, the failure to show an absence of probable cause also defeats that claim. His claim would be that he was unlawfully seized without probable cause as required under the Fourth Amendment of the United States Constitution. A deprivation of this right would be actionable under 42 U.S.C. § 1983, which allows a person to recover against persons acting under color of state law to deprive the plaintiff of a federal right.